UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| LLOYD WILLIAMSON, JR. | CIVIL ACTION NO. 09-1255 |
| VERSUS | JUDGE ROBERT G. JAMES |
| WATCO COMPANIES, INC. | MAG. JUDGE KAREN L. HAYES |

RULING

Pending before the Court is Defendant Watco Companies, Inc.'s ("Watco") Motion for Summary Judgment [Doc. No. 32]. For the following reasons, the motion is DENIED.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Lloyd Williamson, Jr. ("Williamson") brings this case against Watco for race discrimination and retaliation pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII").

In September 2005, Watco[1] (Louisiana Southern Railroad) hired Williamson, who is black, to work in Hodge, Louisiana, as a conductor.

Some time thereafter, Williamson applied for a promotion within the company to work as a trainmaster. Watco did not promote Williamson, but, instead, hired Pete Tinnerello and Justin Morgan ("Morgan"), who are white.

On June 13, 2006, Williamson was suspended from Watco, pending an investigation of an

---

[1]Watco denies that Williamson was one of its employees. Watco maintains that Williamson was employed by its subsidiaries, Louisiana Southern Railroad and Vicksburg Southern Railroad. Watco does not seek summary judgment on this issue, but reserves its right to raise this issue at a later date.

alleged "blue flag violation"[2] that occurred on June 10, 2006.  Approximately three days later, Pat LaCaze ("LaCaze"), the general manager, who is white, decided not to uphold the suspension because of a lack of evidence.

Because of his suspension, Williamson was unable to attend the annual conductor re-certification training program in Hodge.

In late June 2006, Williamson submitted a questionnaire to the Equal Employment Opportunity Commission ("EEOC"), stating that Watco engaged in race discrimination and retaliation related to his suspension, lack of training opportunities, and denial of a promotion.  [Doc. No. 32-22].  On October 30, 2006, Williamson filed a charge of discrimination with the EEOC against Watco, alleging race discrimination and retaliation related to his suspension.  [Doc. No. 32-23].

Some time thereafter, Williamson requested, and was granted, a transfer to a job site in Vicksburg, Mississippi (Vicksburg Southern Railroad).[3]   The trainmaster in Vicksburg was Chad Davis ("Davis"), who is white.

On January 4, 2007, Williamson submitted a leave request to Davis, requesting time off from January 4-6, 2007.  The same day, Davis denied the request and told Williamson to report to work for the night shift from 7:00 P.M. to 7:00 A.M.  Williamson testified that he did not show up for the

---

[2]"A blue flag is a signal placed by workers on or near the track advising trains not to proceed further because people are working there . . . ."  [Doc. No. 32-1, p. 6].

[3]Williamson denies that he requested a transfer to Vicksburg, Mississippi.  However, Williamson testified that "when [Morgan] was finally given the duties and the position of the trainmaster [in Hodge] I spoke with Tim Lunberg, I spoke with Chad, and I talked with Pat Lacaze, and asked them if it was possible for me to move from [Hodge] to . . . Vicksburg . . . ."  [Doc. No. 32-4, p. 102].

start of his scheduled shift because he thought Davis was going to grant his leave request and did not find out until approximately 5:00 P.M. on January 4, 2007, that Davis denied his request.  That night, when Williamson had not arrived at the start of his shift, Davis filled in as a conductor.

Williamson testified that he arrived at work at approximately 11:00 P.M. on January 4, 2007, and that, when he arrived, there was no work truck or job reference available and no one was in the office.  Williamson testified that he worked from 11:00 P.M. to 5:00 A.M. as a brakeman, which included closing gates, lacing hoses, and preparing paperwork, and that, after he finished his work, he left a time sheet indicating that he worked six hours on Davis' desk.

Davis ultimately approved Williamson's leave request for time off January 5-6, 2007.  When Williamson returned to work on January 7, 2007, Davis told him that he was fired for falsifying a time sheet.  LaCaze testified that he had reported the facts surrounding Williamson's alleged falsification of a time sheet and Williamson's work record and performance to human resources employee Tim Lunberg ("Lunberg"), who is white, and that Lunberg, with LaCaze's approval,[4] made the ultimate decision to fire Williamson.

On January 29, 2007, Williamson amended his October 30, 2006 EEOC charge to include an allegation of race discrimination and retaliation related to his firing.  [Doc. No. 32-27].

Approximately one to three months after being fired by Watco, Williamson went to work for Delta Southern Railroad ("Delta") in Tallulah, Louisiana, as a conductor.  Approximately one year later, in 2008, Williamson quit working at Delta and moved to Atlanta, Georgia, to be with his wife. Between three or four months after his move, Williamson obtained a job at the "Phoenix Inn" as a

---

[4]LaCaze testified, "I could have told [human resources] that [he] wanted to keep [Williamson], and they probably would have let me keep him."  [Doc. No. 32-5, p. 79-80].

desk clerk.  Approximately one year later, in 2009, Williamson and his wife lost their jobs and moved to Darlington, South Carolina.  Williamson applied for jobs at military bases in South Carolina, but did not obtain employment.  The record before the Court does not indicate whether Williamson is currently employed.

On July 28, 2009, Williamson filed suit against Watco in this Court.

On August 16, 2010, Watco filed a Motion for Summary Judgment [Doc. No. 32], asserting that Williamson's race discrimination and retaliation claims should be dismissed and, in the alternative, that Williamson should be barred from recovering economic damages.  Williamson filed a Response [Doc. No. 34], and Watco filed a Reply [Doc. No. 49].

## II.    LAW AND ANALYSIS

### A.    Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2).  The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact.  *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial.  *Norman v. Apache Corp.*, 19

4

F.3d 1017, 1023 (5th Cir. 1994).  The nonmoving party must show more than "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255.

### B.    Title VII and § 1981

Watco filed its Motion for Summary Judgment based on the assumption that Williamson was pursuing race discrimination and retaliation claims related to his suspension, firing, lack of training opportunities, and denial of a promotion.  In his Response, Williamson states that his race discrimination and retaliation claims are related to his firing and opposes summary judgment on that ground.

"The Fifth Circuit consistently holds that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal.  *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (citing *Dowthitt v. Johnson*, 230 F.3d 733, 747 n.16 (5th Cir. 2000); *Johnson v. Puckett*, 176 F.3d 809, 814 (5th Cir. 1999)).  By analogy, failure to brief an argument in the district court waives that argument in that court."  *Lopez v. River Oaks Imaging & Diagnostic Grp., Inc.*, 542 F.Supp.2d 653, 658 n.9 (S.D. Tex. 2008) (transgendered job applicant, whose job offer was rescinded because she allegedly "misrepresented" herself as female, waived her claim that discrimination based upon her gender identity was sex discrimination *per se* in violation of Title VII, where she failed to brief the claim or make such claim directly or in response to the employer's summary judgment motion).

The Court finds, to the extent that Williamson alleged race discrimination and/or retaliation

claims in his Complaint related to his suspension, lack of training opportunities, and denial of a promotion, those claims have been waived.  Furthermore, by filing a response to the Motion for Summary Judgment without addressing or even mentioning claims related to his suspension, lack of training opportunities, and denial of a promotion, Williamson has, in essence, admitted that those claims should be dismissed.  However, the Court may consider the facts surrounding Williamson's suspension, lack of training opportunities, and denial of a promotion as background evidence in support of Williamson's claim that he was fired because of his race or in retaliation for his filing of an EEOC charge.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

### 1.   Discrimination

Title VII prohibits an employer from "discharg[ing] an individual, or otherwise discriminat[ing] against any individual . . . because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1).  Likewise, § 1981 states that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981.  The analysis under both statutes is the same.  *See Anderson v. Douglas & Lomason Co., Inc.*, 26 F.3d 1277, 1284 n.7 (5th Cir. 1994).

In order to survive summary judgment, Williamson must raise a genuine issue of material fact that Watco discriminated against him.  "To do so, [Williamson] must satisfy the burden shifting test annunciated by the Supreme Court in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and applied . . . in *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000)."[5]  *Okoye v. Univ. of Tex. Houston Health Sci.*

---

[5]Although a plaintiff may proceed on direct evidence, Williamson has not presented any direct evidence in this matter.  Therefore, the *McDonnel Douglas* burden-shifting test applies.

*Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001).  Those decisions "established an allocation of the burden of production and an order for the presentation of proof, whereby a plaintiff must first establish a prima facie case of discrimination."  *Id*. (internal quotation marks and citations omitted).

To establish a *prima facie* case of discrimination, a plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was subject to an adverse employment action, and (4) he was replaced by someone outside the protected class or that similarly situated individuals outside the protected class were treated more favorably.  *Id*. at 512-13.

If the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse action.  *Id.* at 512.

Finally, if the defendant meets its burden of production, then the burden shifts back to the plaintiff to raise a genuine issue of material fact that the employer's reason is pretext.[6]  *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007).  "'[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false' may be sufficient to infer discrimination."  *Okoye*, 245 F.3d at 514 (quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 430 U.S. 133, 120 S.Ct. 2097, 2109 (2000)).  "When an employer offers inconsistent explanations for its employment decision at different times, . . . the jury may infer that the employer's proffered reasons are pretextual."  *Staten v. New Palace Casino, LLC*, 187 Fed. App'x 350, 359 (5th Cir. June 19, 2006) (citing *Gee v. Principi*, 289 F.3d 342, 347-48 (5th Cir. 2002) (determining summary judgment was improper where the plaintiff produced evidence that the

---

[6]Under the mixed-motive theory, the plaintiff may also raise a genuine issue of material fact that the employer's reason, while true, is only one reason for its conduct, and another motivating factor is the plaintiff's protected characteristic.  *Burrell*, 482 F.3d at 412.  However, Williamson proceeds under the pretext theory alone.

employer's explanation for her non-selection had been inconsistent and there were discrepancies between the decisionmaker's affidavit and testimony)).

"Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive.  No further evidence of discriminatory animus is required because once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation." *Laxton v. Gap Inc.*, 333 F.3d 572, 577 (5th Cir. 2003) (internal quotations and citations omitted).

The Court finds that Williamson has established a *prima facie* case of race discrimination related to his firing.  It is undisputed that Williamson is a member of a protected class, was qualified for the position of conductor, and was fired.  Thus, Williamson has established the first three elements of a *prima facie* case.  With regard to the fourth element, Williamson submits the affidavit of Kenhayo Hobbs ("Hobbs"), who worked at Watco, as evidence that Williamson was replaced by Morgan, who is white.  [Doc. No. 42-9].  Hobbs averred that he observed Morgan start work in Williamson's position the shift after Williamson was fired and that Morgan "took over Williamson's job as a conductor." *Id.*

Watco contends that Williamson cannot meet his *prima facie* burden because he was not replaced by Morgan, but by Edward Marshall, who is black.  Watco argues that Hobbs' affidavit "is the sole piece of evidence supporting Plaintiff's contention [that he was replaced by Morgan], and is in stark contrast to the . . . substantial body of authenticated and admissible documentation provided in support [of Defendant's Motion for Summary Judgment]."  [Doc. No. 49, p. 3].  Watco submits time sheets from the weeks of and following Williamson's firing which show that Morgan

8

did not work at Williamson's work site in Vicksburg, but at a different work site in Bay Springs, Mississippi, for Mississippi Southern Railroad. *See* [Doc. No. 49-2]. However, Morgan himself admits that he was a "fill-in" for a conductor position in Vicksburg after Williamson was fired. [Doc. No. 42-6, pp. 67-68]. In evaluating the evidence tendered by the parties, the Court must accept Williamson's evidence as credible and draw all justifiable inferences in his favor. *Anderson*, 477 U.S. at 255. Contrary to Watco's argument, the Court does not believe that Hobbs' affidavit contains "weak testimony that is so 'utterly discredited' by the evidence in the record such 'that no reasonable jury could . . . believe[] [Hobbs].'" [Doc. No. 49, p. 5] (citations omitted).

Therefore, Williamson has presented sufficient evidence to meet his minimal burden to establish a *prima facie* case of race discrimination.

In response, Watco alleges that it fired Williamson based on "its good faith belief that he violated the Company's policy against falsifying or misrepresenting Company records by signing a time sheet seeking pay for six hours worked when Plaintiff never reported to or relieved his supervisor who was substituting for Plaintiff in Plaintiff's unauthorized absence." [Doc. No. 32-2, p. 10].[7] Thus, Watco has met its burden by producing this legitimate, non-discriminatory reason for Williamson's firing.

In the last step of the burden-shifting analysis, Williamson must present evidence that Watco's alleged reason for firing him is pretextual. In order to meet this burden, Williamson has sought to discredit Watco's explanation.

_____

[7]Williamson cites "(Ex. 7)" for the proposition that Watco's alleged reason for firing him is inconsistent with the reason Watco gave in its February 27, 2007 response to the EEOC–that Williamson falsified a time sheet "because he claimed he worked for six (6) hours [on January 4-5], 2007, but did no work . . . ." The Court has thoroughly checked the record and is unable to find Watco's February 27, 2007 response to the EEOC.

Williamson testified that he worked for six hours the night of January 4, 2007, but has explained that when he arrived four hours into the shift, he did not see anyone in the office and could not find a work order.  [Doc. No. 42-4, pp. 174-76].  Therefore, he performed tasks he believed needed to be done and left at 5:00 A.M., before the end of the shift at 7:00 A.M.  *Id*.  Nevertheless, LaCaze testified that Lunberg made the decision to fire Williamson based on LaCaze's report of the "facts surrounding the situation," (the alleged falsification of a time sheet) together with information concerning Williamson's work records and performance.  [Doc. No. 42-8, pp. 29, 30, & 32].  LaCaze further testified that he gathered the facts surrounding the situation from the engineer and trainmaster on duty that night, Tommy Stubbs ("Stubbs") and Davis.  *Id*. at 32.

However, Stubbs testified that he had no reason to believe that Williamson falsified his time sheet.  [Doc. No. 42-2, pp. 31 & 35].  Davis testified that he actually believed Williamson was at the work site and that Stubbs told him that he saw Williamson at the work site around 11:00 P.M. to 11:30 P.M.  [Doc. No. 42-5, pp. 45, 47, 49, & 51].  Finally, Hobbs averred that he saw Williamson at the work site when he came on duty the morning of January 5, 2007, and that he told Davis that Williamson was working.  [Doc. No. 42-9, p.2].[8]

Watco now tries to counter the testimony of its own fact witnesses by suggesting that Williamson was fired for not reporting to or relieving a supervisor.  However, Watco does not offer evidence that it fired Williamson for this reason.  Rather Watco offers evidence that Williamson was fired because Davis and Stubbs "never actually saw [Williamson] perform any work that night, nor did [Williamson] attach himself to the train crew with which he claimed to have worked, despite

---

[8]The Court does not believe that this is one of "[t]he rare instances in which a showing of pretext is insufficient to establish discrimination" because there is not "abundant and uncontroverted evidence that no discrimination occurred."  *Laxton*, 333 F.3d at 577.

Plaintiff submitting a time sheet claiming pay for six hours of alleged 'work.'"  [Doc. No. 32-2, p. 11].

Based on the evidence, the Court finds that a reasonable juror could find that Watco's alleged reason for firing Williamson is false and infer that Williamson was fired because of his race. Therefore, there remain genuine issues of material fact whether Watco's alleged reason for firing Williamson is false and whether Williamson was fired because of his race.  Watco's Motion for Summary Judgment as to Williamson's race discrimination claim is denied.

### 2.    *Retaliation*

Title VII and § 1981 prohibit an employer from discriminating against an employee because he has opposed an employment practice that is unlawful under Title VII or testified in an investigation, proceeding, or hearing under Title VII.  *See* 42 U.S.C. § 2000e-3(a); 42 U.S.C. § 1981. Again, the analysis under both statutes is the same.  *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003).

Williamson's retaliation claim, like his race discrimination claim, is analyzed under the *McDonnell Douglas* burden-shifting framework.  *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).  To establish a *prima facie* case of unlawful retaliation, a plaintiff must show: (1) that he engaged in protected activity; (2) that he was subjected to a materially adverse employment action; and (3) that there is a causal connection between the protected activity and the materially adverse employment action.  *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).

At the prima facie stage, "[c]lose timing between an employee's protected activity and an adverse action against [the employee] may provide the 'causal connection' required to make out a

prima facie case of retaliation." *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (citing *Swanson v. Jen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)).  The causal link required by the third prong does not rise to the level of a "but for" standard at the prima facie stage.  *Gee v. Prinipi*, 289 F.3d 342, 345 (5th Cir. 2002).  "'[A] time lapse of up to four months has been sufficient to satisfy the causal connection for summary judgment purposes.'"  *Evans*, 246 F.3d at 354 (quoting *Weeks v. NationsBank, N.A.*, No. 98-1352, 2000 WL 341257, at *3 (N.D. Tex. March 30, 2000)); *see also Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 995 (5th Cir. 2005) ("[A] time period of four months is sufficient to demonstrate a causal link for summary judgment purposes."); *cf. Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002) (holding that a five-month lapse, by itself, does not support an inference of a causal link); *Ajao v. Bed Bath and Beyond, Inc.*, 265 Fed. App'x 258, 265 (5th Cir. 2008) (where plaintiff relied "solely" on the fact that the adverse action took place four months after he filed an EEOC charge, the Fifth Circuit held "temporal proximity . . . [was] not close enough, without additional supporting summary-judgment evidence, to establish a causal connection.").

The Court finds that Williamson has established a *prima facie* case of retaliation related to his firing.  It is undisputed that Williamson engaged in protected activity by filing an EEOC charge on October 30, 2006, and that he was subjected to a materially adverse employment action when he was fired on January 7, 2007.  Thus, the only issue is whether Williamson produced sufficient evidence of a causal connection between the filing of the October 30, 2006 EEOC charge and his firing.  The Court finds that he has.

Just over two months after Williamson filed his EEOC charge, Watco fired him.  In addition to the close temporal proximity, LaCaze referred to Williamson as a "constant complainer," and he

12

knew about the EEOC charge prior to reporting to Lunberg.  [Doc. No. 42-8, pp. 38-40].  LaCaze testified that he heard about the EEOC charge from Watco's human resources department.  *Id*. Lunberg, who LaCaze testified was the ultimate decision maker, was also aware of Williamson's EEOC charge.  In November 2006, Lunberg responded by letter to the EEOC denying Williamson's charges. [Doc. No. 42-7].  These alleged facts combined are sufficient to establish a *prima facie* case of retaliation.

Because Williamson has established a *prima facie* case of retaliation, the burden of production shifts to Watco.  The Court has already found in its analysis of Williamson's race discrimination claim that Watco alleged a legitimate, non-discriminatory reason for Williamson's firing: that Williamson allegedly falsified a time sheet.  Likewise, the Court finds that Watco's alleged reason for firing Williamson is also non-retaliatory.  Williamson concedes that Watco has met its burden of production as to his retaliation claim as well.

However, Williamson again argues that Watco's alleged reason for firing him is pretextual because it is false.  For the same reasons stated in the Court's analysis of Williamson's race discrimination claim, a reasonable juror could find that Watco's alleged reason for firing Williamson is false and infer that Williamson was fired because he filed the EEOC Charge.  Therefore, there remains a genuine issue of material fact whether Watco's alleged reason for firing Williamson is false and whether Williamson was fired for filing the EEOC Charge.  Watco's Motion for Summary Judgment as to Williamson's retaliation claim is also denied.

C.    **Economic Damages**

Under Title VII, a claimant has a duty to mitigate his damages.  *Sellers v. Delgado Coll.*, 902 F.2d 1132, 1137 (5th Cir. 1990).  In the context of economic damages, a claimant must use

"reasonable diligence to obtain substantially equivalent employment." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1045 (5th Cir. 1998) (citation omitted). "Substantially equivalent employment is that which afford virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the Title VII claimant has been discriminatorily terminated." *Sellers*, 902 F.2d at 1138 (internal quotation marks and citation omitted).

The "employer has the burden of proving failure to mitigate." *Palasota v. Haggar Clothing, Co.*, 499 F.3d 474, 486 (5th Cir. 2007). The employer can meet this burden by demonstrating that substantially equivalent work was available and that the plaintiff did not exercise reasonable diligence to obtain this work. *Sellers*, 902 F.2d at 1193. However, once the "employer proves that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially equivalent employment." *Id*.

Whether a person has mitigated damages is a question of fact. *Migis*, 135 F.3d at 1045. Therefore, the Court may only render summary judgment on this issue if no reasonable fact finder could find that Williamson exercised reasonable diligence to obtain substantially equivalent employment.[9] FED. R. CIV. P. 56; *Anderson*, 477 U.S. at 248; *Sellers*, 902 F.2d at 1193.

Watco submits Williamson's deposition testimony as proof that Williamson did not exercise reasonable diligence to obtain substantially equivalent employment. Williamson's testimony indicates that there were likely periods of time after he was fired by Watco that he exercised

---

[9]Williamson argues that whether he used reasonable diligence to obtain substantially equivalent employment is a question of fact and may not be ruled on in response to a motion for summary judgment. Williamson's argument is without merit. The Court should render summary judgment if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2).

reasonable diligence in seeking substantially equivalent employment while other times he did not. However, without a more detailed factual record, the Court is unable to determine those exact periods of time or whether no reasonable juror could find that Williamson exercised reasonable diligence or obtained substantially equivalent employment.  Therefore, the Court declines to enter summary judgment in favor of Watco on this issue in whole or in part at this time.  In the event that the parties develop a more detailed factual record at trial on this issue, Watco may file a motion for judgment as a matter of law and/or a motion for judgment notwithstanding the verdict pursuant to Federal Rule of Civil Procedure 50.

## III.    CONCLUSION

For the foregoing reasons, Watco's Motion for Summary Judgment [Doc. No. 32] is DENIED.

MONROE, LOUISIANA, this 13th day of October, 2010.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

15